### KEANE *v.* VILLAGE OF WATERFORD.

(*Supreme Court, General Term, Third Department.* July 2, 1888.)

MUNICIPAL CORPORATIONS—INJURIES BY ICY STREETS—INSTRUCTIONS.

Upon trial of an action against a village for injuries resulting from a fall on the sidewalk, caused by ice, there being a conflict of evidence as to the quantity of ice, and the length of time it had been on the walk, witnesses for defendant testifying that there was a thin film of ice that had frozen on the afternoon of the accident, it was prejudicial error to refuse to instruct that, if the ice had only been formed by rain or sleet that afternoon, the plaintiff could not recover.[1]

Appeal from circuit court.

Action by Ann Keane against the village of Waterford for injuries from negligence of defendant in failing to keep the sidewalk clear of ice. Verdict and judgment for plaintiff, and defendant appealed.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*N. C. Moak*, for appellant. *James W. Verbeck*, for respondent.

INGALLS, J. We are satisfied that the learned justice at the circuit committed an error prejudicial to the defendant's case in refusing to charge, as

[1] See Tobey v. City of Hudson, *ante*, 180, and note.

requested by the defendant's counsel, the following proposition: "Defendant also requested the court to charge the jury that, if they should find that the ice on the sidewalk at the point in question was formed by sleet or rain the afternoon or evening of the day of the accident, the plaintiff cannot recover." The evidence in regard to the condition of the ice upon the sidewalk at the time of the casualty was very conflicting, and we think the defendant's theory at the trial, that the ice upon which the plaintiff fell was formed in the evening of the day on which she received the injury, was so far supported by the evidence adduced in support thereof that the jury would have been justified in so finding the fact, provided they credited the witnesses produced by the defendant. Ambrose K. Worthington testified as follows: "In the afternoon of the day that plaintiff fell, it was thawing, and just at night the sidewalk was all clear. I was busy at the bar, and my man had gone home. A gentleman came in, and said 'there was a lady just fell on your corner.' Immediately after that, I observed the condition of that walk. I went out there. There was a very thin sheet of ice on the brick,—very thin, just like a wafer. There was no accumulation or bed of ice on that walk in front of my hotel, several inches thick. I know it, because we kept it clean. Mr. Snyder and myself did it. Sometimes I would find ice there, and I would put ashes on it. When it was slippery, and we could not get it off, we would use ashes on it. There was not at that time any such thing as three, four, or five inches of ice on that sidewalk. There was no such thing as a ridge of ice formed by the drip of the eaves on the walk. At that time there was not. We used to keep the gutter clean on the eaves of the stoop. There were tin leaders that went out over the sidewalk to discharge. We used to keep the gutters and leaders clean,—used hot water. When they were frozen up, Snyder would get up and clean them out. He didn't clean the sidewalk that day, because it was thawing, and didn't need it. We tried to keep it clean. Sometimes there would come a snow-storm during the night, and then we would put ashes on until we got it clear. There was no ice or snow on it. I don't remember whether it rained that day or not. I went went out after I heard of the accident, and found an enamel of ice on the brick. That is the first I knew it was freezing. It was thawing during the afternoon. I should not think that platform was over five inches above the brick. During that winter, up to the time of the accident, there was not at any time a bed of ice several inches thick along that walk that was allowed to remain there a day or two, or a week, or anything of that kind." The evidence of Snyder, Holton, and Galvin also strongly supports the defendant's theory in regard to the cause of the injury, and the freedom of the defendant from any charge of negligence in not keeping the sidewalk in question reasonably free from accumulation of ice.

Under the circumstances detailed by such witnesses, we think the defendant was entitled to the instruction to the jury which was requested and refused. Whether, upon all the evidence in the case, with the instruction given as requested, the jury would probably have reached a different conclusion, we cannot determine, and all speculation upon the subject would be useless; and, in view of another trial, it does not seem advisable further to discuss the evidence. The defendant's counsel, in making such request to charge, was at liberty to assume that the jury would credit the evidence which had been produced by the defendant, and would find the facts in accordance with the statement in such request, and would follow the direction of the court in regard to the law. Assuming the facts to be as stated in said request, and that the jury had so found them from the evidence, we are convinced that the defendant could not have been held liable, within the doctrine upon this subject as declared by the recent adjudications. *Taylor* v. *City of Yonkers,* 105 N. Y. 202, 11 N. E. Rep. 642; *Kaveny* v. *Troy,* 15 N. E. Rep. 726; *Kinney* v. *City of Troy,* 15 N. E. Rep. 728; *Muller* v. *Newburgh,* 32 Hun, 24, affirmed by the court of

appeals, 105 N. Y. 668; *Blakeley* v. *City of Troy*, 18 Hun, 170. The learned justice replied to such request to charge as follows: "I have covered the entire ground in that regard; and that is that if a fall of snow or water freezes, and forms ice, they are to have a reasonable time in which to remove it, and that is a question for the jury to pass upon." We fail to discover either from the response to the request, or in the general charge to the jury, any instruction which can fairly be construed as even a substantial compliance with such request. We extract from the charge the following: "For instance, if there is a fall of snow or rain which freezes all over the village, perhaps to the depth of one-quarter of an inch,—it may be a mere film or coating,—you would not, perhaps, think it was negligence if the trustees were not able to remove, in a couple of hours, that film of ice, extending over the whole village. This is left to the discretion of the jury. A jury should not hold a corporation, or any other party, liable, on a charge of negligence, for not doing what they could not perform. They are not to be held to the performance of impossibilities." We think the charge was calculated to convey to the jury the impression that they possessed an unlimited discretion in the premises, and were authorized to render a verdict, establishing the negligence of the defendant without regard to the length of time which elapsed between the formation of the ice and the accident. It seems probable that to guard against such an impression, that the defendant's counsel made the request to charge, and which was in effect refused. If we could find in the charge any direction to the jury which even substantially embraced the substance of the request, we would be inclined to hold it sufficient to protect the rights of the defendant, as a judge should not be required to repeat his charge, or be plied with needless and perplexing requests to charge, after he has fairly presented the entire case to the jury. After a careful consideration of this case, we have reached the conclusion that the defendant was entitled to the instruction to the jury requested, and that the refusal may have prejudiced the defendant's case in this respect. The judgment must be reversed, and a new trial ordered, with costs to abide the event.

LEARNED, P. J., and LANDON, J., concur.